

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____X

CHRISTOPHER BROICH,

        Plaintiff,

    -against-

THE INCORPORATED VILLAGE OF SOUTHAMPTON,
THE BOARD OF TRUSTEES OF THE INCORPORATED
VILLAGE OF SOUTHAMPTON, MARK EPLEY,
Individually and as Mayor of the Incorporated Village of
Southampton, BONNIE M. CANNON, Individually and
as Trustee of The Incorporated Village of Southampton,
NANCY C. McGANN, Individually and as Trustee of the
Incorporated Village of Southampton, PAUL L. ROBINSON,
Individually and as Trustee of the Incorporated Village of
Southampton, LARS KINGS, Individually and as former
Chief of Police of the Incorporated Village of Southampton,
and WILLIAM WILSON, JR., Individually and as
Chief of Police of the Incorporated Village of Southampton,

        Defendants.

_____X

CV-08-0553 (SJF)(ARL)

**OPINION & ORDER**

FEUERSTEIN, J.

On February 8, 2008, plaintiff Christopher Broich ("plaintiff") commenced this action

against defendants the Incorporated Village of Southampton ("the Village"), the Board of Trustees

of the Incorporated Village of Southampton ("the Village Board"), and Mark Epley, Bonnie M.

Cannon, Nancy C. McGann, Paul L. Robinson, Lars Kings and William Wilson, Jr., all in their

individual and official capacities (collectively, "the individual defendants"). Plaintiff's second

amended complaint, filed on June 11, 2008, alleges violations of, *inter alia*, 42 U.S.C. §§ 1981,

1983 and 1985, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title

VII"), New York State Executive and Civil Service Laws and the New York State Constitution.

1

Defendants now move pursuant to Rules 12(b)(1) and (c) of the Federal Rules of Civil Procedure to dismiss the complaint against them for lack of jurisdiction and for judgment on the pleadings, respectively. For the reasons stated herein, defendants' motion is granted in part and denied in part.

I.      Background

        A.      Factual Background[1]

                1.      The Parties

Plaintiff is a Caucasian man who has been employed by the Village Police Department ("SVPD") since May 16, 1988. (Second Amended Complaint [Compl.], ¶¶ 9, 15). From May 16, 1988 until approximately 1998, plaintiff was employed as an officer in the SVPD. (Compl., ¶ 15). In approximately 1998, plaintiff was promoted to sergeant. (Compl., ¶ 15).

Defendant Lars King ("King") is the former chief of police of the SVPD. (Compl., ¶ 13). Defendant William Wilson, Jr. is the current chief of police of the SVPD. (Compl., ¶ 13). According to plaintiff, the SVPD is led by the chief of police, who reports directly to the Village Board. (Compl., ¶ 24).

At all relevant times, the Village Board consisted of five (5) members: defendant Mark Epley ("Epley"), the Village mayor; defendants Bonnie M. Cannon ("Cannon"), Nancy C. McGann ("McGann") and Paul L. Robinson ("Robinson"); and non-party William F. Bates

---

[1] As is required on a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the factual allegations in the second amended complaint, though disputed by defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff. They do not constitute findings of fact by this court.

("Bates"). (Compl., ¶¶ 12, 21). According to plaintiff, there are at least two (2) political parties in the Village and Bates is a member of "The Good Sense Party" ("GSP"), while the other four (4) members of the Village Board are members of "The Citizens with Integrity Party" ("CIP"). (Compl., ¶¶ 20-21). Plaintiff further alleges that King and Wilson are also affiliated with the CIP. (Compl., ¶ 21). Plaintiff, on the other hand, "is an outspoken supporter of GSP." (Compl., ¶ 22).

2.    Factual Allegations

a.    Allegations Relating to Plaintiff's First EEOC Charge, as Amended

Plaintiff alleges that throughout 2003 and 2004, James McFarlane ("McFarlane"), who at the time was the police commissioner and a trustee of the Village Board, recommended that plaintiff be promoted to chief of police upon the retirement of James J. Sherry ("Sherry") from that position. (Compl., ¶ 26). According to plaintiff, the president of the police officers' union lobbied, over the objection of Wilson and other CIP party members, to open the civil service examination for the chief of police position to all SVPD employees at or above the level of sergeant, rendering plaintiff eligible for that position. (Compl., ¶ 26). Plaintiff alleges that King was eventually appointed to the chief of police position on a provisional basis, to become permanent upon his passing the civil service examination for that position. (Compl., ¶ 27). According to plaintiff, King was eventually removed from the chief of police position for failing to pass the civil service examination. (Compl., ¶ 28).

In February 2005, plaintiff sought a promotion to the position of detective sergeant.

(Compl., ¶ 29). At that time, he displayed signs on his lawn supporting Peter Tufo, a member of the GSP running for Village mayor. (Compl., ¶ 32). According to plaintiff, members of the CIP party, including Epley, who was also running for mayor; King; Sherry; then-Village Board trustee Ed Britt ("Britt"); and the outgoing mayor, Romonsky, conspired to promote "an unqualified black Detective, Herman Lamison ("Lamison"), up two ranks to the position of Detective Sergeant despite that there were at least six other white Sergeants (including [plaintiff])" who were more qualified. (Compl., ¶ 33). According to plaintiff, the purpose of the conspiracy was to "secur[e] a substantial portion of the black vote for candidate Epley in the upcoming mayoral election." (Compl., ¶ 34). Lamison was promoted to detective sergeant in February 2005 and Epley was elected Village mayor in June 2005. (Compl., ¶¶ 35, 37).

On December 27, 2005, plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (Compl., ¶ 39). In addition, in December 2005, plaintiff reported to the Suffolk County District Attorney's Office ("the DA's office") "what he believed to be highly unethical behavior" in the SVPD, including, *inter alia*, ticket-fixing schemes and Lamison's operation of a private security business without a license. (Compl., ¶¶ 40-41). According to plaintiff, the DA's office failed to take any action on his complaints. (Compl., ¶ 43).

Plaintiff alleges that approximately one (1) month later, the New York State Commission of Investigation ("NYSCI") contacted him regarding his complaints to the DA's office. (Compl., ¶¶ 44-45). Thereafter, plaintiff reported to the NYSCI on a weekly basis regarding his concerns about the SVPD. (Compl., ¶ 46). According to plaintiff, the NYSCI eventually "issued a scathing report to the Village that it had serious problems with respect to how it handled tickets,"

and the New York State Department of Licensing Services fined Lamison for his operation of a security business without a license. (Compl., ¶ 47).

Plaintiff alleges that on January 22, 2006, he observed a handwritten memorandum signed by Lamison in the detectives' office indicating that all doors were to be kept locked when plaintiff was in the building. (Compl., ¶ 50). On January 23, 2006, plaintiff updated his EEOC charge to include a claim of retaliation. (Compl., ¶ 51).

### b.    Allegations Relating to Plaintiff's Second EEOC Charge

Plaintiff alleges: (1) that on April 15, 2006, he received a formal review for the first time in seven (7) years, in which he received an overall rank of 3.46 out of 5 for the reviewing period between October 2005 and April 2006, (Compl., ¶ 52); (2) that on May 12, 2006, King, at the direction of the Village Board trustees and mayor, placed him on paid administrative leave pending the preparation of disciplinary charges against him, (Compl., ¶¶ 53, 57); (3) that on August 16, 2006, Wilson, at the direction of the Village Board trustees and mayor, filed eighteen (18) administrative charges with twenty (20) specifications against him and suspended him without pay, (Compl., ¶¶ 56, 57); and (4) that on August 30, 2006, Wilson threatened to terminate his employment if he proceeded with an administrative hearing to defend the charges against him instead of resigning. (Compl., ¶ 59). Plaintiff further alleges that he was continuously denied promotions to two (2) vacant lieutenant positions for which he was qualified. (Compl., ¶ 61).

On August 31, 2006, plaintiff filed a second charge of retaliation with the EEOC. (Compl., ¶ 63).

Following an eleven (11) day administrative hearing, the charges against plaintiff were

decided in favor of the Village. (Compl., ¶¶ 66, 68). Plaintiff commenced a proceeding in the

Supreme Court of the State of New York, Suffolk County, pursuant to Article 78 of the New

York Civil Practice Laws and Rules and Section 8-806 of the New York Village Law (the

"Article 78 proceeding"), seeking to annul the determination of the Village, Village Board and

Wilson to terminate his employment. (Compl., ¶ 68).

On December 13, 2007, the Village Board voted to terminate plaintiff's employment.

(Compl., ¶ 69). On or about January 14, 2008, plaintiff filed a fourth charge of discrimination

and retaliation with the EEOC. (Compl., ¶ 69).


B.     Procedural History

On February 8, 2008, plaintiff commenced this action against defendants pursuant to,

*inter alia*: (1) Title VII, 42 U.S.C. §§ 1981 and 1983 and the New York Executive Law, alleging

that he was subjected to discrimination and retaliation in violation of his equal protection rights

and First Amendment rights to free speech and free association based upon his political

affiliation and race; and (2) 42 U.S.C. § 1985, alleging that defendants conspired together to

violate his constitutional rights. Plaintiff seeks, *inter alia*, compensatory and punitive damages,

back pay and front pay "in an amount no less than $5,000,000.00 (Five Million Dollars)," as well

as injunctive relief granting him reinstatement to his former position in the SVPD and enjoining

---

[2] Although not alleged in his second amended complaint, plaintiff apparently filed a third
EEOC charge on November 2, 2006 to include charges against his union. (Plaintiff's
Memorandum of Law in Opposition to Defendants' Motion to Dismiss [Plf. Mem.], p. 21).

defendants "from providing negative, misleading, or disparaging references pertaining to Plaintiff's employment." (Compl., "Wherefore" Clause).

Defendants now move pursuant to Rules 12(b)(1) and (c) of the Federal Rules of Civil Procedure to dismiss the complaint against them for lack of jurisdiction and judgment on the pleadings, respectively.

II.     Discussion

A.     12(b)(1)

1.     Standard of Review

Where subject matter jurisdiction is lacking, "dismissal is mandatory." Manway Const. Co., Inc. v. Housing Authority of City of Hartford, 711 F.2d 501, 503 (2d Cir. 1983). "In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1055 (2d Cir.1993) (quoting Goldman v. Gallant Securities, Inc., 878 F.2d 71, 73 [2d Cir.1989]). In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), cert. filed, ___ S.Ct. ___, 2009 WL 789199 (June 1, 2009). However, when deciding a jurisdictional motion, district courts may look beyond the allegations of the complaint and "examine evidence outside of the pleadings." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008), rehearing in banc granted (Aug. 12, 2008). The plaintiff has the burden of establishing by

7

a preponderance of the evidence that subject matter jurisdiction exists. <u>Arar</u>, 532 F.3d at 168 (citing <u>APWU v. Potter</u>, 343 F.3d 619, 623 (2d Cir. 2003).

### 2. Analysis

Defendants contend that this Court lacks subject matter jurisdiction because the allegations in the complaint are identical to those contained in the Article 78 petition previously filed in state court and, thus, this action is not ripe for adjudication by this Court. However, although defendants seek dismissal for lack of subject matter jurisdiction, they concede that the pendency of the Article 78 proceeding in state court is not a jurisdictional bar to an action in federal court and instead seek to stay this action based upon the abstention doctrine established by <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). (<u>See</u> Defendants' Memorandum of Law [Def. Mem.], p. 7).

In <u>Colorado River</u>, the Supreme Court held:

> "Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'"

<u>Colorado River</u>, 424 U.S. at 813, 96 S.Ct. 1236 (citing <u>Allegheny County v. Frank Mashuda Co.</u>, 360 U.S. 185, 188-189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 [1959]).

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress. * * * This duty is not, however, absolute." <u>Quackenbush v. Allstate Ins. Co.</u>, 517

U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citations omitted); see also Burnett v. Physician's Online, Inc., 99 F.3d 72, 76 (2d Cir. 1996) (holding that generally, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, however, "exceptional" circumstances do exist that permit a federal court to abstain to a state court in situations in which state and federal courts exercise concurrent jurisdiction simultaneously). Abstention may be warranted "by considerations of 'proper constitutional adjudication,' 'regard for federal-state relations,' or 'wise judicial administration.'" Quackenbush, 517 U.S. at 716, 116 S.Ct. 1712 (citing Colorado River, 424 U.S. at 817, 96 S.Ct. 1236). "[F]ederal courts have the power to refrain from hearing [1] cases that would interfere with a pending state criminal proceeding, * * * or with certain types of state civil proceedings, * * *; [2] cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law, * * *; [3] cases raising issues intimately involved with the States' sovereign prerogative, the proper adjudication of which might be impaired by unsettled questions of state law, * * * [4] cases whose resolution by a federal court might unnecessarily interfere with a state system for the collection of taxes, * * *; and [5] cases which are duplicative of a pending state proceeding." Id. at 716-717 (internal quotations and citations omitted). Defendants rely only upon the last category, which is commonly known as Colorado River abstention.

"[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." Colorado River, 424 U.S. at 818, 96 S.Ct. 1236. In assessing the appropriateness of dismissal in the event of an exercise of

concurrent jurisdiction, the court must consider the following factors: "(1) the assumption of jurisdiction by either court over any *res* or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained[,] * * * (5) whether state or federal law supplies the rule of decision, and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction." Burnett, 99 F.3d at 76; see also United States v. Pikna, 880 F.2d 1578, 1582 (2d Cir. 1989) (accord). "No one factor is necessarily determinative; a carefully considered judgement taking into account both the obligation to exercise jurisdiction and the combination of factors counselling [sic] against the exercise is required. * * * Only the clearest of justifications will warrant dismissal." Colorado River, 424 U.S. at 818-819, 96 S.Ct. 1236 (citation omitted); see also Burnett, 99 F.3d at 76 (holding that the balance of factors weighs heavily in favor of the exercise of jurisdiction). On a motion for abstention, the presumption is in favor of retaining jurisdiction, not yielding it. Pikna, 880 F.2d at 1582.

Colorado River abstention is only available in situations involving "concurrent" or "parallel" proceedings. See Dittmer v. County of Suffolk, 146 F.3d 113, 117-118 (2d Cir. 1998). "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." National Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp., 108 F.3d 17, 22 (2d Cir. 1997). The present action includes five (5) parties who are not named in the Article 78 proceeding. Specifically, the Article 78 proceeding names the Village Board, but not the mayor and individual Village Board trustees. Moreover, the issues presented in this action are not "essentially the same" as those presented in the Article 78 proceeding. The federal

10

complaint seeks vindication for defendants' alleged discriminatory and retaliatory acts pursuant to federal law and seeks, *inter alia*, compensatory and punitive damages, back pay and front pay "in an amount no less than $5,000,000.00 (Five Million Dollars)," as well as injunctive relief granting him reinstatement to his former position in the SVPD and enjoining defendants "from providing negative, misleading, or disparaging references pertaining to Plaintiff's employment." (Compl., "Wherefore" Clause). To the contrary, the issues presented in the Article 78 proceeding are whether the defendants' termination of plaintiff was based on substantial evidence, contrary to the procedures of the SVPD, arbitrary and capricious and an abuse of discretion. The relief plaintiff seeks in the Article 78 proceeding is declaratory relief, reinstatement, back pay and attorneys' fees. Although there may be some overlap between the issues and relief sought in the two actions, the presence of different parties, issues and relief sought preclude a finding that the Article 78 proceeding and this federal lawsuit are parallel proceedings.

In any event, even assuming the existence of parallel proceedings, the balance of factors weighs against abstention. As both the state court and this Court sit in New York, neither forum is more convenient than the other. "[W]here the federal court is just as convenient as the state court, that factor favors retention of the case in federal court." Village of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999) (internal quotations and citation omitted). Moreover, any state law issues involved in this case are not novel or particularly complex. In addition, since the issues that can be raised in an Article 78 proceeding are limited, plaintiff's rights may not be adequately protected in state court. Accordingly, the branch of defendants' motion seeking abstention and/or dismissal for lack of subject matter jurisdiction is denied.

11

B.   Rule 12(b)(c)

1.   Standard of Review

In deciding a Rule 12(c) motion, the same standard as applicable to a motion to dismiss under Rule 12(b)(6) is employed. Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009). That standard of review is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); see also Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949.

The Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert. denied, 128 S.Ct. 2964, 171 L.Ed.2d 906 (2008)

(quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

In determining a motion to dismiss, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153.

2.    Title VII Claims

Defendants contend that plaintiff has not exhausted his administrative remedies because although plaintiff has filed multiple charges with the EEOC, defendants have received only one (1) Right to Sue letter which is unrelated to plaintiff's termination. Plaintiff contends that he filed (1) his first EEOC charge on December 27, 2005 alleging, *inter alia*, failure to promote, which he subsequently updated and/or amended on January 23, 2006, August 31, 2006 and November 2, 2006, to allege, *inter alia*, retaliation[3]; and (2) his second EEOC charge on January 14, 2008, which challenged his termination as retaliatory. Plaintiff contends: (1) that on or about

---

[3] According to plaintiff "for reasons known only to the EEOC," with the exception of the January 23, 2006 charge, the amended charges were all assigned separate charge numbers. Thus, there are four (4) separate EEOC charge numbers.

February 15, 2008, the EEOC issued a Right to Sue letter on the August 31, 2006 charge (charge no. 520-2006-03670); (2) that on or about March 18, 2008, the EEOC issued a Right to Sue letter on the January 14, 2008 charge (charge no. 520200801372); and (3) that on or about March 19, 2008, the EEOC issued a Right to Sue letter on the November 2, 2006 charge (charge no. 520200603500). Plaintiff contends that those Right to Sue letters "presumably incorporate all of the prior charges that he filed,"(Plaintiff's Memorandum of Law in Opposition [Plf. Mem.], p. 21), i.e., the December 27, 2005 charge, as updated by the January 23, 2006 charge (collectively, charge number 160-2006-00756).

Exhaustion of administrative remedies and the timely filing of a complaint with the EEOC are preconditions to filing a Title VII action in federal court. See, Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003); Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). "Administrative exhaustion is an essential element of Title VII's statutory scheme, the purpose of which is to avoid unnecessary judicial action by the federal courts by giving the administrative agency the opportunity to investigate, mediate, and take remedial action." Canty v. Wackenhut Corrections Corp., 255 F.Supp.2d 113, 116 (E.D.N.Y. 2003)(internal quotations and citation omitted); see also Bey v. Welsbach Elec. Corp., No. 01 Civ. 2667, 2001 WL 863419, at * 2 (S.D.N.Y. Jul. 30, 2001), aff'd, 38 Fed. Appx. 690 (2d Cir. 2002) (accord).

Claims that were not asserted in an EEOC charge may be pursued in a federal action under Title VII if they are "reasonably related" to those that were filed with the agency. Ximines v. George Wingate High School, 516 F.3d 156, 158 (2d Cir. 2008) (per curiam); Williams v. New York City Housing Authority, 458 F.3d 67, 70 (2d Cir. 2006); Deravin, 335 F.3d at 200.

14

There are three types of "reasonably related" claims: (1) claims that "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) claims that allege retaliation for filing an EEOC charge; and (3) claims that allege "further incidents of discrimination carried out in the same manner alleged in precisely [sic] the EEOC charge." Carter v. New Venture Gear, Inc., 310 Fed. Appx. 454, 455 (2d Cir. 2009) (quoting Butts v. City of New York Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1402-1403 (2d Cir. 1993), superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir. 1998)).

In determining whether claims "fall within the scope of the EEOC investigation", the focus should be on the factual allegations contained in the EEOC charge itself. Deravin, 335 F.3d at 201; see also Williams, 458 F.3d at 70 (accord). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" Williams, 458 F.3d at 70 (citing Deravin, 335 F.3d at 202).

Since exhaustion is an affirmative defense, see Boos v. Runyon, 201 F.3d 178, 182 (2d Cir. 2001); Downey v. Runyon, 160 F.3d 139, 146 (2d Cir. 1998), the defendant bears the burden of establishing the plaintiff's failure to timely exhaust his administrative remedies. See Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); German v. Pena, 88 F.Supp.2d 216, 219-220 (S.D.N.Y. 2000).

Clearly, plaintiff exhausted his administrative remedies with respect to his claims relating to the August 31, 2006, November 2, 2006 and January 14, 2008 EEOC charges, for which he received Right to Sue letters from the EEOC. (See Declaration of Eric S. Tilton, Esq. [Tilton

Decl.], Exs. 3 and 4). Accordingly, to the extent defendants seek dismissal of plaintiff's Title VII claims relating to those charges, that branch of their motion is denied.

However, plaintiff's blanket contention that the three (3) Right to Sue letters addressed specifically to the latter three (3) charges "presumably incorporate all of the prior charges that he filed,"(Plf. Mem., p. 21), is overly broad. Rather, the claims raised in his December 27, 2005 charge, as amended by the January 23, 2006 charge, would only be deemed exhausted if those claims were reasonably related to his latter charges. Since no party has submitted the actual EEOC charges filed by plaintiff, with the exception of the January 14, 2008 charge, it cannot be ascertained on this motion whether plaintiff's later charges gave the EEOC adequate notice to investigate his earlier claims relating, *inter alia*, to defendants' failure to promote plaintiff and subsequent retaliation by Lamison. Since defendants bear the burden of establishing plaintiff's failure to exhaust his administrative remedies, the branch of their motion seeking dismissal of plaintiff's Title VII claims relating to the December 27, 2005 charge, as amended by the January 23, 2006 charge, is denied without prejudice to renewal.

### 3.    Section 1985 Claims

Defendants contend that plaintiff's Section 1985 conspiracy claims "are vague and general, and therefore insufficient," (Def. Mem., p. 14), and, in any event, are barred by the intracorporate conspiracy doctrine. Although plaintiff opposes this branch of defendants' motion on the basis that his conspiracy claims are sufficiently pled, he fails to address the intracorporate conspiracy doctrine. (See Plf. Mem., pp. 21-22).

The elements of a claim under § 1985(3), the only possibly relevant provision here, are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, ...; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right or privilege of a citizen of the United States." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007). In order to state a claim under Section 1985, a plaintiff must allege "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." See Palmieri v. Lynch, 392 F.3d 73, 86 (2d Cir. 2004) (citing Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999)).

Even assuming, without deciding, that plaintiff's Section 1985 conspiracy claims are adequately pled, those claims are barred by the intracorporate conspiracy doctrine. The "intra-corporate conspiracy" doctrine generally provides that a corporation or public entity "generally cannot conspire with its employees or agents as all are considered a single entity." Everson v. New York City Transit Auth., 216 F.Supp.2d 71, 76 (E.D.N.Y. 2002)(citation omitted); see also, Quinn v. Nassau County Police Dept., 53 F.Supp.2d 347, 359 (E.D.N.Y. 1999). The intracorporate conspiracy doctrine "bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity, at least where the complaint fails to allege that the various [municipal] entities were effectively acting as separate entities in carrying out the alleged conspiracy." Dunlop v. City of New York, No. 06 Civ. 0433, 2008 WL 1970002, at * 9 (S.D.N.Y. May 6, 2008).

An exception to the intra-corporate conspiracy doctrine applies where a plaintiff "adequately alleges that each defendant possessed an independent, personal conspiratorial purpose," wholly separate and apart from the entity. Everson, 216 F.Supp.2d at 76 (citation

17

omitted); see also Girard v. 94th St. and Fifth Ave. Corp., 530 F.2d 66, 71-72 (2d Cir. 1976).

Whether the doctrine applies depends upon whether each defendant was acting in furtherance of the municipality's interests, or whether their conduct was motivated by an independent personal interest. Quinn, 53 F.Supp.2d at 360. However, personal bias or prejudice alone, does not support application of the exception; rather there must be some other personal interest or stake alleged on the part of the individual defendants. See, Salgado v. City of New York, 00 Civ. 3667, 2001 WL 290051, at * 8 (S.D.N.Y. Mar. 26, 2001); Johnson v. Nyack Hosp., 954 F.Supp. 717, 723 (S.D.N.Y. 1997).

Defendants are all employees of a single municipal entity, i.e., the Village. Indeed, plaintiff does not allege that the Village Board trustees, mayor, former and current chief of police, or any other Village entity, were effectively acting as separate entities in carrying out the alleged conspiracy to terminate plaintiff's employment. See, e.g. Dunlop, 2008 WL 1970002, at * 9 (finding that the plaintiff's conspiracy claims against the NYPD, City of New York and mayor of the City of New York were all barred by the intracorporate conspiracy doctrine). Moreover, plaintiff does not allege that defendants were acting solely in their independent personal interests. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1985 claims is granted and those claims are dismissed with prejudice as barred by the intracorporate conspiracy doctrine. See, e.g. Rodriguez v. City of New York, ___ F.Supp.2d ___, 2008 WL 420015, at * 25 (E.D.N.Y. Feb. 11, 2008) (dismissing claims against police officers as barred by the intracorporate conspiracy doctrine); Little v. City of New York, 487 F.Supp.2d 426, 441-442 (S.D.N.Y. 2007) (granting summary judgment dismissing the plaintiff's conspiracy claims against the defendant police officers as barred by the intracorporate conspiracy doctrine

18

since all of the police officers were part of a single corporate entity, i.e., the City of New York).

4.    Claims against the Village Board Trustees

Defendants contend that since plaintiff fails to allege any wrongdoing on the part of the Village Board trustees in the complaint, the claims against those defendants must be dismissed. Plaintiff contends that the second amended complaint sufficiently alleges that the Village Board trustees (1) directed the chief of police to bring disciplinary charges against plaintiff in retaliation for his complaints of discrimination and other whistle-blowing activities; and (2) voted to terminate plaintiff based on those charges in further retaliation for his protected activities.

The only allegations in plaintiff's second amended complaint even implicating the Village Board trustees in the conduct of which plaintiff complains are: (1) that in placing plaintiff on paid administrative leave pending the preparation of disciplinary charges and filing administrative charges against plaintiff and then suspending him without pay, "King and Wilson [respectively] were acting at the direction of the Trustees and the Mayor who were engaged in the conspiracy to terminate [plaintiff] from the Police Department," (Compl., ¶ 57); and (2) that "the Village Board terminated [plaintiff's] employment after learning of the outcome of the administrative hearing," (Compl., ¶ 69). Assuming, without deciding, that those allegations sufficiently plead claims against the Village Board trustees, the first claim is dismissed pursuant to the intracorporate conspiracy doctrine, as set forth above. Moreover, the second claim is clearly based solely on the Village Board trustees' official capacities, as it complains of the collective action of the Village Board and does not allege any personal wrongdoing on the part of

19

the individual trustees. Since the Village and Village Board are the real parties in interest with respect to any official capacity claim, see generally Kentucky v. Graham, 473 U.S. 159, 165-166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the claims against the Village Board trustees are dismissed with prejudice as redundant to the claims against the Village and Village Board. See, e.g. Fox v. State University of New York, 497 F.Supp.2d 446, 451 (E.D.N.Y. 2007); Anemone v. Metropolitan Transportation Authority, 410 F.Supp.2d 255, 264, n. 2 (S.D.N.Y. 2006); Lipton v. County of Orange, N.Y., 315 F.Supp.2d 434, 452 (S.D.N.Y. 2004). Accordingly, the plaintiff's claims are dismissed in their entirety with prejudice as against the individual Village Board trustees Cannon, McGann and Robinson. For the same reasons, the official capacity claims against the remaining individual defendants, Epley, King and Wilson, are likewise *sua sponte* dismissed with prejudice as redundant to the claims against the Village and Village Board.

III.     Conclusion

For the reasons stated herein: (1) the branch of defendants' motion seeking dismissal of the second amended complaint for lack of subject matter jurisdiction and/or Colorado River abstention is denied; (2) the branch of defendants' motion seeking dismissal of plaintiff's Title VII claims is denied, with leave to renew with respect to plaintiff's claims relating to the December 27, 1995 EEOC charge, as amended by the January 23, 2006 charge; (3) the branches of defendants' motion seeking dismissal of plaintiff's Section 1985 claims and claims against the Village Board trustees are granted, and those claims are dismissed with prejudice[4]; and (4) all

_____

[4] Accordingly, all claims against the Village Board trustees are dismissed with prejudice and the Clerk of the Court is directed to amend the caption of this case accordingly.

20

official capacity claims against the remaining individual defendants are *sua sponte* dismissed with prejudice. The parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on July 28, 2009 at 11:30 a.m., with authority or persons with authority to resolve this action, for a settlement and/or scheduling conference. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: July 23, 2009
      Central Islip, N.Y.

Copies to:

The Law Office of Steven A. Morelli, P.C.
One Old Country Road, Suite 347
Carle Place, New York 11514
Attn:  Eric Scott Tilton, Esq.
       Steven A. Morelli, Esq.
       Anthony Christopher Giordano, Esq.

Devitt Spellman Barrett
50 Route 111
Smithtown, New York 11787
Attn:  Jeltje DeJong, Esq.
       Kelly E. Wright, Esq.