

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————X

CHRISTOPHER BROICH,

            Plaintiff,

    -against-

THE INCORPORATED VILLAGE OF SOUTHAMPTON,
MARK EPLEY, BONNIE M. CANNON, NANCY C.
MCGANN, PAUL L. ROBINSON, LARS KINGS and
WILLIAM WILSON, JR.,

            Defendants.

————————————————————————X

CV-08-0553 (SJF)(ARL)

**OPINION & ORDER**

FEUERSTEIN, J.

On February 8, 2008, plaintiff Christopher Broich ("plaintiff") commenced this action

against defendants the Incorporated Village of Southampton ("the Village"), the Board of

Trustees of the Incorporated Village of Southampton ("the Village Board"), and Mark Epley,

Bonnie M. Cannon, Nancy C. McGann, Paul L. Robinson, Lars Kings and William Wilson, Jr.,

all in their individual and official capacities (collectively, "the individual defendants").[1]

Plaintiff's second amended complaint, filed on June 11, 2008, alleges violations of, *inter alia*, 42

U.S.C. §§ 1981, 1983 and 1985, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et*

*seq.* ("Title VII"), New York State Executive Law ("NYSHRL") and the New York State

Constitution.

Defendants now move pursuant to Rule 56 of the Federal Rules of Civil Procedure for

---

[1] By order entered July 24, 2009, *inter alia*, plaintiff's claims against the Village Board and
all official capacity claims against the individual defendants were dismissed with prejudice.

partial summary judgment dismissing plaintiff's: (1) Title VII claims; (2) equal protection claim; (3) retaliation and discrimination claims; (4) Monell claim; and (5) state law claims. For the reasons stated herein, defendants' motion is granted.

I.    Background

    A.    Factual Background[2]

        1.    The Parties

Plaintiff is a Caucasian male who has been employed by the Village Police Department ("SVPD") since May 16, 1988. (Second Amended Complaint [Compl.], ¶¶ 9, 15). Plaintiff was employed as an officer in the SVPD from May 16, 1988 until approximately 1998. (Compl., ¶ 15). In approximately 1998, plaintiff was promoted to sergeant. (Compl., ¶ 15).

Defendant Lars King ("King") is the former chief of police of the SVPD. (Compl., ¶ 13). Defendant William Wilson, Jr. ("Wilson") was King's successor as chief of police of the SVPD. (Compl., ¶ 13).

At all relevant times, the Village Board consisted of five (5) members: defendant Mark Epley ("Epley"), the Village mayor; defendants Bonnie M. Cannon ("Cannon"), Nancy C. McGann ("McGann") and Paul L. Robinson ("Robinson"); and non-party William F. Bates ("Bates"). (Compl., ¶¶ 12, 21). Plaintiff alleges that at all relevant times, Bates was a member of "The Good Sense Party" ("GSP"), a political party in the Village which he supported, whereas the other four (4) trustees of the Village Board, as well as King and Wilson, were members of the

_____

[2] The factual allegations are derived from the parties' Rule 56.1 Statements and the affidavits and exhibits submitted in support of, and in opposition to, defendants' motion. The facts are not in dispute, unless otherwise indicated.

opposing "Citizens with Integrity Party" ("CIP"). (Compl., ¶¶ 20-22, 32). According to plaintiff, he "would often" post signs on his front lawn supporting GSP candidates, including Tufo, Epley's opponent during the June 2005 mayoral election. (Id.)

2.    Allegations Relating to Plaintiff's First EEOC Charge, as Amended

In February 2005, plaintiff sought a promotion to the position of detective sergeant. (Compl., ¶ 29). On February 18, 2005, Herman Lamison ("Lamison"), an African-American male, was promoted to detective sergeant. (Compl., ¶ 35). Epley was elected Village mayor in June 2005. (Compl., ¶ 37).

On December 27, 2005, plaintiff filed a charge of discrimination (charge no. 160-2006-00756) with the United States Equal Employment Opportunity Commission ("EEOC"), (Compl., ¶ 39), asserting claims against the Village and King for discrimination based on race, national origin and disability arising from the failure to promote him on February 17, 2005. (Declaration of Diane K. Farrell in support of motion for summary judgment [Farrell Decl.], Ex. F).

In December 2005, plaintiff also reported to the Suffolk County District Attorney's Office ("the DA's office") "what he believed to be highly unethical behavior" in the SVPD, including, inter alia, ticket-fixing schemes and Lamison's operation of a private security business without a license. (Compl., ¶¶ 40-41). Approximately one (1) month later, the New York State Commission of Investigation ("SCI") contacted him regarding his complaints to the DA's office. (Compl., ¶¶ 44-45). Thereafter, plaintiff regularly reported to the SCI regarding his concerns about the SVPD. (Compl., ¶ 46). Specifically, plaintiff complained to the SCI: (1) that Lamison arranged an improper plea-bargain with respect to one of his arrests; (2) that Chief Sherry

3

arranged the release of that arrestee to Lamison's custody; (3) of ticket-fixing in the SVPD; (4) that Wilson worked security on one occasion while on-duty; (5) that Lamison operated a security company without a license; (6) that Mayor Romonaski allegedly stole a police-issued pistol with illegal ammunition; (7) that Wilson claimed a work-related injury for an injury he sustained off-duty; and (8) that Wilson issued a false letter of necessity qualifying a local painting contractor for a pistol permit. (Plaintiff's Responses to Interrogatories, Farrell Decl., Ex. R, ¶ 6).

Plaintiff alleges that on January 22, 2006, he observed a handwritten memorandum signed by Lamison in the detectives' office indicating that all doors were to be kept locked when plaintiff was in the building. (Compl., ¶ 50). On January 23, 2006, plaintiff amended EEOC charge no. 160-2006-00756 to include a claim of retaliation based upon: (1) conduct of Captain Thomas Cummings ("Cummings") on January 19, 2006 which plaintiff believed constituted "witness tampering" and "witness intimidation;" and (2) Lamison's January 22, 2006 memorandum. (Farrell Decl., Ex. G).

On May 12, 2006, King placed plaintiff on paid administrative leave pending the preparation of disciplinary charges against him. (Compl., ¶¶ 53, 57).

On May 15, 2006, plaintiff again amended his EEOC charge no. 160-2006-00756 to assert claims of discrimination based on race, national origin, age and disability, and retaliation, against the Village and King. (Farrell Decl., Ex. H). Plaintiff claimed that he was placed on administrative leave in retaliation for his April 26, 2006 Freedom of Information Law ("FOIL") request seeking documents supporting his EEOC charge. (Id.)

On June 8, 2006, the EEOC dismissed plaintiff's EEOC charge no. 160-2006-00756 and issued a right-to-sue letter indicating, *inter alia*, that "[b]ased upon its investigation, [it] [was]

4

unable to conclude that the information obtained [in plaintiff's charges] establish[d] violations of the statutes." (Farrell Decl., Ex. I).

On or about August 8, 2006, plaintiff, and another claimant, Brian Platt, served a Notice of Claim against the Village alleging, *inter alia*, that plaintiff was retaliated against for exercising his free speech rights by filing EEOC charge no. 160-2006-00756. (Declaration of Eric S. Tilton [Tilton Decl.], Ex. 7). Plaintiff's sole allegation in the notice of claim was that he was placed on administrative leave on May 12, 2006 in retaliation for his filing of the EEOC charge. (Id. at ¶ 3).

### 3. Allegations Relating to Plaintiff's Second and Third EEOC Charges

On August 16, 2006, Wilson commenced formal disciplinary charges, consisting of eighteen (18) administrative charges with twenty (20) specifications, against plaintiff based upon the charges drafted before he became Chief of Police on June 20, 2006, (Defendants' Rule 56.1 Statement of Undisputed Facts [Def. 56.1 Stat.] , ¶85; Plaintiff's Rule 56.1 Counterstatement [Plf. 56.1 Stat.], ¶ 85), and suspended plaintiff without pay for thirty (30) days. (Compl., ¶¶ 56, 57; Farrell Ex. K).

On August 17, 2006, plaintiff filed a charge of retaliation (charge no. 520-2006-03500) against Wilson and the Village with the EEOC alleging that Wilson suspended him without pay in retaliation for his filing of his prior EEOC charge (charge no. 160-2006-00756) and that the disciplinary charges preferred against him constituted "unjustified negative evaluations of his performance during the same evaluation period where [he] was evaluated with an 'above average' numeric score." (Farrell, Ex. K).

5

Plaintiff alleges that on August 30, 2006, Wilson and Cummings threatened to terminate his employment if he proceeded with an administrative hearing to defend the disciplinary charges against him instead of resigning. (Compl., ¶ 59).

On August 31, 2006, plaintiff filed a charge of retaliation against the Southampton Village Police Benevolent Association Inc. ("the PBA") with the EEOC, alleging that the PBA was not supporting him or protecting him from adverse employment actions being taken against him by the Village and SVPD. (Farrell Decl., Ex. J). Although plaintiff designated the charge against the PBA as an "amended complaint," the EEOC assigned the charge against the PBA a new charge number (charge no. 520-2006-03670). (Id.)

On November 2, 2006, plaintiff filed an amended EEOC charge, relating to charge no. 520-2006-03500[3], alleging age discrimination. (Farrell Decl., Ex. L). In the amended EEOC charge (no. 520-2006-03500), plaintiff complained of the disciplinary charges preferred against him by Wilson; his suspension without pay; the conduct of Wilson and Cummings in threatening him with termination, and the resulting loss of benefits, if he did not resign in lieu of an administrative hearing on the disciplinary charges against him; the failure to promote him for more than five (5) years; and the failure to offer him, or assign him to, training in 2005 and 2006. (Id.)

4.     Allegations Relating to Plaintiff's Fourth EEOC Charge

On or about November 15, 2006, the SCI issued a report regarding its investigation into

_____

[3] Although plaintiff indicated that this charge was also an amendment to his first EEOC charge (charge no. 160-2006-00756), that charge had been dismissed by the EEOC almost five (5) months prior to the filing of this amended charge.

plaintiff's allegations against the SVPD indicating that its investigation revealed, *inter alia*: (1) that the traffic summonses of which plaintiff complained "were not destroyed improperly" and "that several other summonses sent to the [SCI] for review had also been referred to and adjudicated in a local court;" (2) that, nonetheless, "no disposition had been reported for approximately ten percent of the summonses assigned to the [SVPD];" (3) that there was "insufficient evidence to substantiate many of the allegations [against the SVPD], including the claim that [SVPD] officers were improperly disposing of traffic summonses[,] * * * [but] that, for at least several years, the [SVPD] failed to adequately oversee the handling and issuance of traffic summonses by its officers and employees[,] * * * [and] that one [SVPD] officer [Lamison] ha[d] been operating an unlicensed security business since 2004;" and (4) that both of the indicated deficiencies were being addressed satisfactorily by the SVPD, insofar as the SVPD was "implementing procedures to ensure adequate oversight of all traffic summonses, and the unlicensed security business owned by [Lamison] [was] * * * the subject of a DOS administrative hearing." (Farrell, Ex. E).

On December 9, 2007, following an eleven (11) day administrative hearing ending on August 9, 2007, the Hearing Officer found "clear and convincing evidence" of plaintiff's guilt of all but two (2) of the disciplinary charges preferred against him and recommended that plaintiff's employment be terminated. (Compl., ¶¶ 66, 68; Farrell Decl., Ex. O). On December 13, 2007, the Village Board passed a resolution terminating plaintiff's employment based upon the Hearing Officer's findings and recommendation. (Compl., ¶ 69).

On January 14, 2008, plaintiff filed a fourth charge of discrimination and retaliation (charge no. 520-2008-01372) against the Village with the EEOC alleging, *inter alia*, that his

7

employment was terminated in retaliation for his filing of EEOC charge no. 160-2006-00756 and

that he was discriminated against based upon his race, national origin, age and disability. (Farrell

Decl., Ex. M).

### B. Procedural History

On February 8, 2008, plaintiff commenced this action against defendants pursuant to,

*inter alia*: (1) Title VII, 42 U.S.C. §§ 1981 and 1983 and the NYSHRL, alleging that he was

subjected to discrimination based upon his race and color and retaliation in violation of his equal

protection rights and First Amendment rights to free speech and free association based upon his

political affiliation and race; and (2) 42 U.S.C. § 1985, alleging that defendants conspired

together to violate his constitutional rights.[4] Plaintiff seeks, *inter alia*, compensatory and

punitive damages, back pay and front pay "in an amount no less than $5,000,000.00 (Five

Million Dollars)," as well as injunctive relief granting him reinstatement to his former position in

the SVPD and enjoining defendants "from providing negative, misleading, or disparaging

references pertaining to Plaintiff's employment." (Compl., "Wherefore" Clause).

On February 15, 2008, March 18, 2008 and March 19, 2008, respectively, the EEOC

issued, upon plaintiff's request, right-to-sue letters with respect to charge nos. 520-2006-03670

(plaintiff's third EEOC charge [against the PBA]), 520-2008-01372 (plaintiff's fourth EEOC

charge) and 520-2006-03500 (plaintiff's second charge, as amended). (Tilton Decl., Exs. 2, 4

and 3, respectively).

---

[4] By order entered in this action on July 24, 2009, *inter alia*, plaintiff's Section 1985 claim (sixth cause of action), claims against the Village Board and all official capacity claims against the individual defendants in this action were dismissed with prejudice.

In or about April 2008, plaintiff commenced an Article 78 proceeding in the Supreme

Court of the State of New York, County of Suffolk, seeking, *inter alia*, review of defendants'

determination finding plaintiff guilty of sixteen (16) of the disciplinary charges preferred against

him and to annul defendants' determination to terminate his employment with the SVPD on the

basis that the Hearing Officer's findings and recommendation were not based on substantial

evidence, were made in violation of the procedures of the SVPD, were affected by errors of law,

were arbitrary and capricious and were an abuse of discretion. (Farrell Decl., Ex. P). By order

dated August 13, 2008, plaintiff's Article 78 proceeding was transferred to the Supreme Court of

the State of New York, Appellate Division, Second Judicial Department. (Farrell Decl., Ex. Q).


On February 9, 2010, the Appellate Division confirmed defendants' determination,

denied plaintiff's Article 78 petition and dismissed the proceeding. Matter of Broich v. Village

of Southampton, 70 A.D.3d 822, 894 N.Y.S.2d 109 (2d Dept. 2010). The Appellate Division

held, *inter alia*: (1) that defendants' determination was supported by substantial evidence; (2)

that plaintiff's "acts, inter alia, of insubordination, lying to his superiors, deserting his duty post,

and failing to provide backup 'cannot be sanctioned since such behavior poses a serious threat to

the discipline and efficiency of the police force'"; (3) that "[d]ismissal for any one of th[o]se acts

would not be so disproportionate to the offense as to be shocking to one's sense of fairness, * * *

especially in light of [plaintiff's] prior disciplinary record;" and (4) that plaintiff's remaining

contentions were without merit. Id. at 823, 894 N.Y.S.2d 109. On June 3, 2010, the New York

State Court of Appeals denied plaintiff's motion for leave to appeal the Appellate Division's

order. Matter of Broich v. Village of Southampton, 14 N.Y.3d 712, 903 N.Y.S.2d 771, 929

9

N.E.2d 1006 (2010).


II.    Discussion

    A.    Standard of Review

    Summary judgment should not be granted unless "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56©.  In ruling on a summary judgment motion, the district court must first "determine whether

there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun &

Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted);

see Ricci v. DeStefano, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a

motion for summary judgment, facts must be viewed in the light most favorable to the

nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added)

(internal quotations and citation omitted)).  "A fact is material if it 'might affect the outcome of

the suit under governing law.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial." Ricci, 129 S.Ct. at 2677 (quoting

Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348,

89 L.Ed.2d 538 (1986)).

    If the district court determines that there is a genuine dispute as to a material fact, the

court must then "resolve all ambiguities, and credit all factual inferences that could rationally be

drawn, in favor of the party opposing summary judgment," Spinelli, 579 F.3d at 166 (internal

quotations and citation omitted); see also Aulicino v. New York City Dept. of Homeless

Services, 580 F.3d 73, 79 (2d Cir. 2009), to determine whether there is a genuine issue for trial.

See Ricci, 129 S.Ct. at 2677. A genuine issue exists for summary judgment purposes "where the

evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County

of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d

Cir. 2007)); see also United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809

(2d Cir. 2009). "The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact," F.D.I.C. v. Great American Ins. Co., 607 F.3d 288, 292 (2d Cir.

2010) (quotations and citation omitted), after which the burden shifts to the nonmoving party to

"come forward with specific evidence demonstrating the existence of a genuine dispute of

material fact." Id.; see also Spinelli, 579 F.3d at 166. Thus, the nonmoving party can only defeat

summary judgment "by coming forward with evidence that would be sufficient, if all reasonable

inferences were drawn in [its] favor, to establish the existence of" a factual question that must be

resolved at trial. Spinelli, 579 F.3d at 166 (internal quotations and citations omitted); see also

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).


B.    Claims Relating to Conduct Occurring Between February 2005 and May 2006

    1.    Failure to Promote in February 2005

        a.    Title VII Claims

Defendants contend that plaintiff's Title VII claim based upon the failure to promote him

in February 2005, as alleged in his first EEOC charge (charge no. 160-2006-00756), is time

11

barred because plaintiff did not file that EEOC charge until December 27, 2005, more than three hundred (300) days after the alleged unlawful practice.

Plaintiff contends that he timely filed an Intake Questionnaire with the EEOC on November 21, 2005, within the three hundred (300) day limitations period. According to plaintiff, "[i]t is the date of [his] filing of the Intake Questionnaire, rather than the date of filing the Charge of Discrimination, that must be used for purposes of calculating the 300-day look-back period under Title VII."

The timely filing of a complaint with the EEOC is a prerequisite to filing a Title VII action in federal court. 42 U.S.C. § 2000e-5(e)(1); see Lewis v. City of Chicago, Ill., 130 S.Ct. 2191, 2196-7, 176 L.Ed.2d 967 (2010); McPherson v. New York City Dept. of Educ., 457 F.3d 211, 213 (2d Cir. 2006). 42 U.S.C. § 2000e-5(e)(1) provides, in pertinent part, as follows:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Thus, to sustain a claim for unlawful discrimination under Title VII in New York, where the New York State Division of Human Rights addresses charges of discriminatory employment

practices, a plaintiff must first file an administrative charge of discrimination with the EEOC within three hundred (300) days of the alleged discriminatory act. See Cherry, 381 Fed. Appx. at 58; Baroor v. New York City Dept. of Educ., 362 Fed. Appx. 157, 159 (2d Cir. Jan. 21, 2010).

a.    What constitutes an EEOC "Charge"?

The Supreme Court has held that "if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Federal Express Corp. v. Holowecki, 552 U.S. 389, 128 S.Ct. 1147, 1158, 170 L.Ed.2d 10 (2008). In Holowecki, an ADEA case, the Supreme Court found an "Intake Questionnaire" completed by the plaintiff which included the employee's and employer's names, addresses and telephone numbers; an allegation that the plaintiff and other employees had been the victims of "age discrimination;" the number of employees who worked at the facility where she was stationed; and a statement indicating that the plaintiff had not sought the assistance of any government agency regarding the matter, which was supplemented by a detailed six (6) page affidavit at the end of which the plaintiff asked the agency to force the defendant to end its age discrimination, to be a "charge" sufficient to commence the ADEA's time limits and procedural mechanisms. Id., 552 U.S. 389, 128 S.Ct. at 1159-1160. In so holding, however, the Supreme Court acknowledged that not every completed Intake Questionnaire should be treated as a charge, absent circumstances "where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required." Id., 552 U.S. 389, 128 S.Ct. at 1159.

Unlike the Intake Questionnaire in Holowecki, which was supplemented by a six (6) page

13

affidavit detailing the alleged discrimination and a clear request that the agency act to stop the discrimination, plaintiff's Intake Questionnaire does not constitute a charge of discrimination. Like the Intake Questionnaire in Holowecki, plaintiff's Intake Questionnaire specifically indicates: (1) that "Filling out this form does not constitute filing a charge;" (2) that "The purpose of this questionnaire is to solicit information to enable the [EEOC] to avoid the intake of matters not within its jurisdiction;" and (3) that in addition to determining whether the EEOC has jurisdiction, information provided on the form would be used "to provide such pre-charge filing counseling as is appropriate." 552 U.S. 389, 128 S.Ct. at 1159. However, plaintiff's Intake Questionnaire is devoid of any request that the EEOC act to stop the alleged discrimination and there is no evidence that plaintiff intended to activate the EEOC's administrative process by filing his questionnaire or that the discrimination of which plaintiff complained was so clear and pervasive that the EEOC could have inferred that action was required. (Tilton Decl., Ex. 6). Plaintiff's completed Intake Questionnaire "taken as a whole and examined from the point of view of an objective observer, is an effort to provide relevant facts to the EEOC so it could make [the] determinations [regarding whether it has jurisdiction and whether counseling was appropriate]; it is not a request that the EEOC activate its enforcement machinery." Morrow v. Metropolitan Transit Authority, No. 08 Civ. 6123, 2009 WL 1286208, at * 6 (S.D.N.Y. May 8, 2009); see also Simpson v. City of New York Department of Housing Preservation and Development, No. 08 Civ. 0185, 2009 WL 996388, at * 6 (S.D.N.Y. Apr. 13, 2009) (distinguishing the Intake Questionnaire in Holowecki from the Intake Questionnaire at issue in that case on the basis that no evidence existed of an intent by the plaintiff to "activate" the EEOC's administrative process by filing her Intake Questionnaire, and the EEOC provided the

plaintiff information informing her of the need to timely file a charge).

### b. When Does the Charging Period Commence?

The EEOC charging period is triggered when a "discrete discriminatory [or retaliatory] act occurred." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" Id. at 110, 122 S.Ct. 2061; see also Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 2239 (2d Cir. 2007). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." National Railroad, 536 U.S. at 114, 122 S.Ct. 2061. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id.

Plaintiff knew of the failure to promote him in February 2005 no later than February 18, 2005, when Lamison was promoted to the position plaintiff sought. (Compl., ¶¶ 29, 35). A failure to promote is a discrete discriminatory act which is easily identified and, thus, claims based on a failure to promote are barred if not timely filed. See, e.g. National Railroad, 536 U.S. at 114, 122 S.Ct. 2061; Valtchev, 2010 WL 4595539, at * 1; McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010). Accordingly, plaintiff's first EEOC charge, which was admittedly filed more than three hundred (300) days after the alleged failure to promote plaintiff had occurred, was not timely filed.

Although "[a]n exception exists for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination[,] * * * multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism

do not amount to a continuing violation." Valtchev, 2010 WL 4595539, at * 1; see also Nghiem v. U.S. Dept. of Veterans Affairs, 323 Fed. Appx. 16, 17-8 (2d Cir. Mar. 3, 2009), cert. denied, 130 S.Ct. 1121 (2010) (the continuing violation doctrine "allows a plaintiff to bring an otherwise untimely claim where she has alleged a timely claim that is part of an ongoing policy of discrimination * * *."); Paterson v. County of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004) (holding that recovery for discrete acts of discrimination and retaliation is precluded even if other acts of discrimination occurred within the statutory time period). Plaintiff has not alleged or established any specific ongoing policy of discrimination on the part of defendants and his allegations of discrimination and retaliation involve only discrete acts that do not trigger the continuing violation exception. See, e.g. Valtchev, 2010 WL 4595539, at * 2; McGullam, 609 F.3d at 75.

Although the timeliness requirement of Title VII is an affirmative defense "analogous to a statute of limitations," McPherson, 457 F.3d at 214 (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)), and is, thus, subject to the equitable doctrines of tolling and estoppel, see National Railroad, 536 U.S. at 113, 122 S.Ct. 2061; Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80 (2d Cir. 2003), plaintiff has not established that he is entitled to equitable avoidance of the administrative exhaustion requirement. See Zerilli-Edelglass, 333 F.3d at 80. Therefore, the branch of defendants' motion seeking dismissal of plaintiff's Title VII discrimination claim (third cause of action) based upon the failure to promote him to the position of detective sergeant in February 2005 is granted and that claim is dismissed with prejudice as time-barred.

b.  Section 1983 Equal Protection Claim (First Cause of Action)[5]

In his first cause of action, plaintiff claims that defendants deprived him of his equal protection rights by selectively prosecuting him on the basis of his political affiliation and race, and in retaliation for his "opposition to practices forbidden by the law * * *." (Second Amended Complaint [Compl.], ¶ 71). Defendants contend that plaintiff cannot maintain a "class-of-one" equal protection claim on the public employment context and that, in any event, plaintiff cannot establish a selective enforcement claim because he does not identify any similarly situated individuals who were treated differently than him.

Plaintiff contends that he is not asserting a "class-of-one" equal protection claim and identifies Lamison, "an African American police officer," as a similarly situated individual who was treated differently than he was "with respect to the promotional decision that occurred on or about February 18, 2005." (Plf. Mem., p. 5).

The Equal Protection Clause requires that the government treat all similarly situated individuals alike. Lawrence v. Texas, 539 U.S. 558, 579, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004). Equal protection selective enforcement claims require two (2) essential elements: (a) that the plaintiff was treated

_____

[5] Plaintiff's equal protection claim is based solely upon the failure to promote him in February 2005. (See Farrell Decl., Ex. R, Interr. Response No. 14). In any event, "[t]here is no recognized claim for retaliation under the Equal Protection Clause." Dorcely v. Wyandanch Union Free School District, 665 F.Supp.2d 178, 199, 201 (E.D.N.Y. 2009); see also Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996); Frenkel v. New York City Off-Track Betting Corp., 701 F.Supp.2d 544, 555 (S.D.N.Y. 2010). Accordingly, to the extent plaintiff's equal protection cause of action is based upon claims of retaliation, that claim is dismissed as a matter of law. Moreover, for the reasons set forth below, plaintiff cannot establish a Section 1983 claim for any of the other conduct challenged in the complaint.

differently than others similarly situated; and (b) that the selective treatment was motivated by "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff]." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000); see also Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995); LaTrieste Restaurant and Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994)). "'To be "similarly situated," the individuals with whom [the plaintiff] attempts to compare (him)self must be similarly situated in all material respects' and have 'engaged in comparable conduct.'" Stewart v. Naples, 308 Fed. Appx. 526, 527 (2d Cir. 2009) (summary order) (quoting Shumway v. United Parcel Services, Inc., 118 F.3d 60, 64 (2d Cir. 1997)). Although the question of whether two individuals are similarly situated is generally a factual issue, "a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790-1 (2d Cir. 2007) (internal quotations and citations omitted); see also Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006); Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 n. 2 (2d Cir. 2001). "[A]t the summary judgment stage, a plaintiff must present evidence comparing (himself) to individuals that are similarly situated in all material respects." Mangino v. Incorporated Village of Patchogue, ___ F.Supp.2d ___, 2010 WL 3719898, at * 34 (E.D.N.Y. Sept. 23, 2010) (internal quotations and citation omitted).

Plaintiff has not demonstrated that he was similarly situated to any other employee with respect to the failure to promote him in February 2005. Plaintiff's identification of Lamison as a person similarly situated to himself, absent evidence that plaintiff and Lamison were appropriate comparators, i.e., that Lamison was similarly situated to plaintiff in all material respects, is

18

insufficient to defeat summary judgment. See, e.g. Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 143 (2d Cir. 2010) (holding that summary judgment in the defendant's favor was appropriate where there was no evidence in the record raising a question of fact as to whether the comparators were similarly situated to the plaintiff); Cine SK8, 507 F.3d at 791 (finding that summary judgment was appropriate where the plaintiff proffered no evidence that the comparator was similarly situated to the plaintiff in any material way). Plaintiff's claim that Lamison was similarly situated to him "is not based on evidence that gives rise to a genuine issue of material fact but rather on sheer conjecture and speculation that is insufficient to withstand the [defendants'] motion for summary judgment." Cine SK8, 507 F.3d at 791 (internal quotations and citation omitted); see also Walder v. White Plains Board of Education, ___ F.Supp.2d ___, 2010 WL 3724464, at * 11 (S.D.N.Y. Sept. 24, 2010) (holding that the plaintiff's conclusory allegations that other employees were given favorable treatment was insufficient to defeat summary judgment). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's equal protection claim is granted and that claim (first cause of action) is dismissed with prejudice.

c. Section 1981 Discrimination Claim (Third Cause of Action)[6]

Section 1981 claims are analyzed pursuant to the burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Fincher v. Depository Trust &

---

[6] Plaintiff did not engage in any protected activity prior to the alleged failure to promote him in February 2005 and, thus, he has not established a prima facie retaliation claim under Section 1981 with respect to the failure to promote him.

Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).

A central element of any Section 1981 claim is that the defendant "intentionally discriminated against [the plaintiff] on the basis of [his or her] race." Lizardo v. Denny's Inc., 270 F.3d 94, 103 (2d Cir. 2001). The record is devoid of any direct evidence of racial animus and, for the reasons set forth above, there is insufficient circumstantial evidence from which a jury can infer that defendants intentionally discriminated against plaintiff on the basis of his race with respect to the failure to promote him in February 2005. "[A] jury cannot infer discrimination from thin air." Id. at 104. Accordingly, plaintiff's Section 1981 discrimination claim (third cause of action) based upon the failure to promote plaintiff in February 2005 is dismissed.

<blockquote>

2.      Remaining Claims Relating to Conduct Occurring between February 2005 and May 2006

      a.     Title VII Claims

</blockquote>

Defendants contend that plaintiff's remaining Title VII claims relating to his first EEOC charge, as amended, must be dismissed as time-barred because plaintiff did not commence this action within ninety (90) days of the issuance of the EEOC's right-to-sue letter relating to that charge.

Plaintiff contends that he "clearly manifested an intent to keep amending his charge of discrimination to add subsequent acts of discrimination and retaliation * * * [but] [f]or reasons known only to the EEOC, new charge numbers were assigned to some of those amendments, but each amendment clearly indicates that it is an amendment to [his] previously filed original

charge." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [Plf. Mem.], pp. 3-4). According to plaintiff, because he "clearly indicated his intention to file amendments to his original charge of discrimination, it is only the last set of Notices of Rights to Sue that are relevant, which were all issued in 2008 and should be found to incorporate the original charge of discrimination that Plaintiff continually amended." (Id. at 4).

Title VII requires that a claim be filed in federal court within ninety (90) days of the plaintiff's receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Johnson v. St. Barnabas Nursing Home, No. 09-0069-cv, 2010 WL 744357, at * 1 (2d Cir. Mar. 5, 2010). "While the 90-day rule is not a jurisdictional predicate, 'in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day.'" Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984) (quoting Rice v. New England College, 676 F.2d 9, 11 (1st Cir. 1982)); Jones v. City School District of New Rochelle, 695 F.Supp.2d 136, 142 (S.D.N.Y. 2010) (accord); see also Celestine v. Cold Crest Care Center, 495 F.Supp.2d 428, 432 (S.D.N.Y. 2007) (holding that although the ninety-day period is subject to extension for equitable reasons, "the statutory time limits imposed by Congress are not to be taken lightly.") The ninety (90)-limitation period "is not merely a suggestion; it is a statutorily-imposed requirement necessitating strict adherence, subject only to very narrow exceptions." Celestine, 495 F.Supp.2d at 432.

The EEOC issued its right-to-sue letter relating to plaintiff's first EEOC charge (charge no. 160-2006-00756), as amended, on June 8, 2006. (Farrell Decl., Ex. I). Thus, plaintiff was required to commence any Title VII action pertaining to the allegations asserted in that charge

within ninety (90) days thereafter, i.e., on or before September 9, 2006.[7] Plaintiff's argument that he continuously amended his first EEOC charge rather than filing new EEOC charges for each act of discrimination and/or retaliation would require the EEOC to indefinitely defer acting upon any charge filed with it in order to allow repeated amendments in the event additional claims of discrimination and/or retaliation occur and would, in effect, vitiate the exhaustion and timeliness requirements of Title VII. Accordingly, plaintiff's claim is without merit.

Since plaintiff did not commence this action until February 8, 2008, the branch of defendants' motion seeking dismissal of plaintiff's Title VII discrimination and retaliation claims relating to the acts of which he complained in his first EEOC charge, as amended, (charge no. 160-2006-00756) is granted and those claims (third and fourth causes of action)[8] are dismissed with prejudice as time-barred.

b.    Section 1981 Retaliation Claims

Under the McDonnell Douglas analysis, a plaintiff must first establish a prima face case

---

[7] "Absent sufficient evidence to the contrary, it is presumed that a plaintiff received his or her right to sue letter three days after its mailing." St. Barnabas, 2010 WL 744357, at * 1; Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996). In addition, it is presumed that a notice mailed by a governmental agency, such as the EEOC, was mailed on the date shown on the document. Johnson v. Verizon, No. 08 Civ. 11373, 2009 WL 3000080, at * 5 (S.D.N.Y. Sept. 21, 2009).

[8] For the sake of clarity, in addition to plaintiff's failure to promote claim, plaintiff's Title VII claim based upon the following acts is time-barred: (1) plaintiff's retaliation claim based upon his allegations (a) that Cummings tampered with, and intimidated, witnesses on January 19, 2006 and (b) that on January 22, 2006, Lamison posted a memorandum indicating that all doors were to be kept locked when plaintiff was in the building; and (2) plaintiff's discrimination and retaliation claims relating to his placement on administrative leave on May 12, 2006.

of retaliation by demonstrating: (1) that he or she participated in a protected activity; (2) that the employer was aware of the protected activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse employment action. McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817; see Hicks, 593 F.3d at 164; Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). For purposes of his remaining retaliation claims pertaining to conduct occurring prior to and on May 12, 2006, the first two (2) elements are presumed.

"The anti-retaliation law 'protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) (quoting Burlington North and Santa Fe Railway Co. v. White, 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). In Burlington, the Supreme Court held that:

> "A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

548 U.S. at 68, 126 S.Ct. 2405. "Affirmative efforts to punish a complaining employee are at the heart of any retaliation claim." Fincher, 604 F.3d at 721 (internal quotations and citation omitted).

"[P]etty slights or minor annoyances" do not constitute actionable retaliation. Hicks, 593 F.3d at 165 (citation omitted). Accordingly, plaintiff's claim that Lamison posted a memorandum directing that all doors be locked when plaintiff was in the building, absent some harm or injury to plaintiff other than annoyance or embarrassment, does not constitute an adverse

23

employment action for purposes of plaintiff's Section 1981 retaliation claim.

In addition, "[a]ctions deemed materially adverse are those which cause the plaintiff actual hardship in one form or another." Garel v. City of New York, 2006 WL 3024725, at * 3 (E.D.N.Y. Oct. 23, 2006) (internal quotations and citation omitted). Plaintiff's claim that Cummings threatened and/or intimidated plaintiff's potential witnesses does not allege an adverse employment action because he has not alleged any actual personal hardship. See, e.g. Garel v. City of New York, 2006 WL 3024725, at * 3 (E.D.N.Y. Oct. 23, 2006) (rejecting the plaintiff's Section 1981 retaliation claim that by retaliating against a witness for her willingness to testify on the plaintiff's behalf, the defendant also retaliated against the plaintiff insofar as her witness was now intimidated and other possible witnesses who heard about the incident might also be intimidated because that was "not the kind of 'adverse action' that Title VII (or Section 1981 or 1983) envisions.") Like the plaintiff in Garel, plaintiff "does not have standing to sue for retaliation when []he [was] not * * * personally injured." 2006 WL 3024725, at * 3. The only people injured by Cummings' conduct was plaintiff's witnesses, not plaintiff himself. See, e.g. id. Moreover, to the extent plaintiff alleges that other witnesses may also have been intimidated by Cummings' conduct, that injury is too speculative to constitute an adverse action.[9] See, e.g. id.

For the reasons set forth below, plaintiff can also not demonstrate a Section 1981 claim based upon his placement on administrative leave on May 12, 2006. Accordingly, plaintiff's

---

[9] Since the definition of an adverse employment action is broader for retaliation claims than for discrimination claims, see generally Burlington, 548 U.S. 53, 126 S.Ct. 2405, plaintiff also cannot establish a prima facie Section 1981 discrimination claim based upon Cummings' conduct and Lamison's memorandum.

Section 1981 claims (third and fourth causes of action) are dismissed in their entirety.

c. First Amendment Retaliation Claim (Second Cause of Action)

Defendants contend that plaintiff's First Amendment retaliation claim based upon his complaints to the District Attorney's Office and SCI must be dismissed because he was speaking in his official capacity as a public employee on issues of public concern or related to his personal job concerns, not as a private citizen for First Amendment purposes. Plaintiff contends that since he "communicated his purportedly protected speech to two outside agencies which neither his duties nor his position required him to go to," he was speaking as a private citizen for First Amendment purposes.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). In Garcetti, the Supreme Court held that:

> "[T]wo inquiries * * * guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern* * *. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech * * *. If the answer is yes, * * * [t]he question becomes whether the relevant government entity has an adequate justification for treating the employee differently from any other member of the general public. * * * [W]hile the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance."

Id. at 418, 420, 126 S.Ct. 1951 (internal quotations and citations omitted); see also Anemone v. Metropolitan Transportation Authority, ___ F.3d ___, 2011 WL 9376, at * 15, 17 (2d Cir. Jan. 4, 2011). "To survive summary judgment on a First Amendment retaliation claim, a public employee must bring forth evidence showing that he has engaged in protected First Amendment

activity, he suffered an adverse employment action, and there was a causal connection between the protected activity and the adverse employment action." Anemone, ___ F.3d ___, 2011 WL 9376, at * 15. "The plaintiff bears the 'initial burden of showing that an improper motive played a substantial part in defendant's action.'" Id. (quoting Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir. 2003)).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421, 126 S.Ct. 1951; see also Huth v. Haslun, 598 F.3d 70, 74 (2d Cir. 2010). "This is true even when such speech regards a matter of public concern." Anemone, ___ F.3d ___, 2011 WL 9376, at * 17. "[S]peech can be 'pursuant to' a public employee's official job duties even though it was not required by, or included in, the employee's job description, or in response to a request by the employer." Weintraub v. Board of Education of City of New York, 593 F.3d 196, 203 (2d Cir. 2010), cert. denied, 131 S.Ct. 444, 178 L.Ed.2d 344 (2010); see also Huth, 598 F.3d at 74. A public employee speaks pursuant to his official duties if his speech was "part-and-parcel of his concerns about his ability to properly execute his duties * * *." Weintraub, 593 F.3d at 203; see also Huth, 598 F.3d at 74.

Plaintiff complained to the District Attorney and SCI about, *inter alia*, alleged ticket fixing, abuse of sick time and political corruption in the Village and SVPD because that is part of what he, as a police officer, was employed by the SVPD to do, i.e., to enforce local and state laws in the Village. Plaintiff's complaints were "part-and-parcel of his concerns about his ability to properly execute his duties" as a police officer. Id. Accordingly, plaintiff was not speaking as a

citizen on matters of public concern, but rather pursuant to his official duties and, thus, his speech was not protected by the First Amendment. See, e.g. Garcetti, 547 U.S. at 421-2, 126 S.Ct. 1951; Anemone, ___ F.3d ___, 2011 WL 9376, at * 17-8 (finding that the plaintiff's statements, made "outside the chain of command," regarding his suspicions about "LIRR graft and MTA corruption" were made pursuant to his official duties as an MTA security director and were thus not insulated from employer discipline under Garcetti).

Plaintiff's complaints about the disposition of his arrests, the understaffing of the SVPD and the conduct of his superiors and other officers in the SVPD are also speech made pursuant to plaintiff's official duties. See, e.g. Huth, 598 F.3d at 74 (finding that the plaintiff's speech relating to concerns about the actions of his coworkers did not qualify as protected speech under the First Amendment). In addition, to the extent that any of plaintiff's speech related generally to his own situation and was personal in nature, such speech does not qualify as protected speech for First Amendment purposes. See, e.g. Huth, 598 F.3d at 74-5.

Since plaintiff has not established that he engaged in any activity protected by the First Amendment with respect to his complaints to the D.A.'s office and the SCI, the branch of defendants' motion seeking summary judgment dismissing that claim (second cause of action) is granted and that claim is dismissed.

In addition to his claim of retaliation for his complaints to the D.A.'s office and SCI, plaintiff bases his First Amendment retaliation claim upon his political affiliation. Plaintiff specifically bases his political affiliation claim upon the following incidents: his placement on administrative leave in May 2006; his suspension without pay in August 2006; the preparation, initiation and pursuit of disciplinary charges against him; the termination of his employment and

resulting loss of benefits; the denial of in-service training; and the "public defamation" of him in 2007, following his termination. (Farrell Decl., Ex. R, Interr. Response No. 12). Plaintiff did not identify his support of a GSP candidate during the June 2005 mayoral election as an incident of retaliation upon which he was basing his First Amendment claim based upon his political affiliation. (See id.) Moreover, plaintiff has not proffered any evidence that the failure to promote him in February 2005 was causally related to his support of Epley's opponent during the June 2005 mayoral election, e.g., that he displayed a sign supporting Epley's opponent on his lawn prior to February 18, 2005, approximately four (4) months before the election. Accordingly, plaintiff cannot maintain such a claim now. Moreover, for the reasons set forth below, plaintiff cannot maintain a First Amendment retaliation claim based upon the incidents of retaliation that he did specifically identify. Accordingly, plaintiff's First Amendment retaliation claim (second cause of action) is dismissed in its entirety.

> d.    State Law Claims

Defendants contend that plaintiff has failed to allege the filing of a timely Notice of Claim with the Village and, therefore, his state law claims must be dismissed. Plaintiff "concedes that the notice of claim he filed did not specifically identify [the NYSHRL] as a source of recovery * * *," but contends that "it does clearly allege that he was retaliated against for filing a charge of discrimination pursuant to Title VII * * *, which should have put the Defendants squarely on notice that [he] intended to pursue a retaliation claim under the [NYSHRL]." (Plf. Mem., p. 15). In response, defendants contend that the Notice of Claim "is insufficient to notify the Village of any claim other than placing [plaintiff] on administrative

leave in retaliation for filing a charge of discrimination with the EEOC." (Defendants' Reply Memorandum [Reply], pp. 9-10).

State notice of claim requirements apply to state law claims brought in federal court. See Felder v. Casey, 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); Parise v. New York City Department of Sanitation, 306 Fed. Appx. 695, 697 (2d Cir. Jan. 16, 2009); Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999).  Under New York law, service of a notice of claim upon a municipality is a condition precedent to maintaining a tort action against the municipality or any of its officers, agents or employees acting within the scope of their employment.  N.Y. Gen. Mun. L. §§ 50-e and 50-i(1).  The notice of claim must be served within ninety (90) days after the claim arises, N.Y. Gen. Mun. Law § 50-e(1)(a), and the plaintiff must commence any tort action seeking, *inter alia*, damages for personal injury against the municipality, its officers, agents, servants or employees, within one (1) year and ninety (90) days "after the happening of the event upon which the claim is based." N.Y. Gen. Mun. L. § 50-i(1)(a).  "Notice of claim requirements 'are construed strictly by New York state courts * * * [and a] [f]ailure to comply with th[o]se requirements ordinarily requires a dismissal for failure to state a cause of action." Hardy, 164 F.3d at 793-794.

Since plaintiff failed to timely file a Notice of Claim with respect to any of his NYSHRL claims, with the exception of his placement on administrative leave in May 2006, those claims (third, fourth and fifth causes of action) are dismissed.  Moreover, for the reasons set forth below, plaintiff's remaining state law claim pertaining to his placement on administrative leave must also be dismissed.

C.     Retaliation and Discrimination Claims Relating to Conduct Occurring on or after May 12, 2006

Claims brought pursuant to Title VII, Section 1981 and 1983 and the NYSHRL are all analyzed under the burden-shifting framework of McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817. See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010); Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010); Aulicino, 580 F.3d at 80; Ruiz, 609 F.3d at 491 (Sections 1981 and 1983 discrimination claims); Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010); Demoret v. Zegarelli, 451 F.3d 140 (2d Cir. 2006) (Section 1983 equal protection claim). Accordingly, the within analysis applies to all of plaintiff's retaliation and discrimination claims, regardless of the specific statute under which those claims are brought.[10]

1.     Retaliation Claims (Second, Fourth and Fifth Causes of Action)

Under the McDonnell Douglas analysis, a plaintiff must first establish a prima face case of retaliation by demonstrating: (1) that he or she participated in a protected activity; (2) that the employer was aware of the protected activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse employment action. McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817; see Hicks, 593 F.3d at 164; Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). The burden of establishing a prima face case is minimal. See Hicks, 593 F.3d at 164; Jute, 420 F.3d at 173.

a.     Prima Facie Case

---

[10] For ease of reference, the analysis refers only to Title VII.

Plaintiff engaged in protected activities, *inter alia*, by filing complaints with the EEOC on August 17, 2006, August 31, 2006 and January 14, 2008 and filing an amendments to his EEOC complaint on November 2, 2006. Plaintiff alleges, and it is assumed for purposes of this motion, that defendants were aware of his EEOC complaints, with the exception of the August 31, 2006 EEOC complaint against the PBA.[11]

Plaintiff has demonstrated a prima facie case of retaliation with respect to his remaining retaliation claims, which are based upon the following allegations: (a) that in August 2006, approximately three (3) months after he submitted his second amendment to his first EEOC complaint, Wilson preferred formal disciplinary charges against him, suspended him without pay for thirty (30) days and threatened to terminate his employment, if he did not resign in lieu of proceeding with the administrative hearing on the charges against him; and (b) that in December 2007, defendants terminated his employment. Thus, plaintiff's remaining retaliation claims relate to the commencement and pursuit of disciplinary charges against him.

### b.    Non-Retaliatory Reason for Actions

Once the plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its actions. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; see Hicks, 593 F.3d at 164.

The disciplinary charges against plaintiff related to the following conduct:

(1) Between February 2006 and May 2006, plaintiff failed to provide backup to Police Officer Marla Donovan ("Donovan") and, as a result, on May 12, 2006, the date King

---

[11] To the extent plaintiff bases his retaliation claims on his filing of the EEOC complaint against the PBA, which is not a party to this action, those claims are dismissed.

placed plaintiff on paid administrative leave, Donovan complained to King that she was concerned for her safety when working with plaintiff, (Charge I (Misconduct–Failure to Perform Required Duties) and Charge II (Incompetence–Failure to Properly Back Up Fellow Police Officer));

(2) On March 14, 2006, approximately two (2) months prior to the date King placed plaintiff on paid administrative leave, a situation occurred at the Southampton Inn involving a suicidal person barricaded in a room, during which plaintiff allegedly left his assigned post without permission to change his uniform, withheld the "master key" given to him by the Inn's personnel which would have allowed for easier entry into the room and had gained access to a room at the Inn without informing his superiors. During the ensuing two (2) months, four (4) members of the SVPD's Special Response Team ("SRT") resigned from the unit, two (2) of whom specifically referenced plaintiff's lack of judgment during the Inn incident, which jeopardized the safety of the SRT members, as one of the reasons for their resignations, (Charge III (Misconduct–Insubordination), Charge IV (Misconduct–Dishonesty Toward Superior Officer), Charge V (Misconduct–Violation of Police Department Rules), Charge VI (Misconduct– Conduct Unbecoming a Police Officer), and Charge VII (Incompetence– Incompetent Behavior Involving a Critical Incident));

(3) On March 2, 2006, approximately two (2) months prior to the date King placed plaintiff on paid administrative leave, at approximately 10:00 p.m., plaintiff engaged in a vehicular pursuit of two minors riding all-terrain vehicles (ATVs) in the street in blizzard-like conditions. According to Cummings, due to the dangerousness of the road conditions, the minor traffic infractions involved and the length of the pursuit, which ended outside the jurisdiction of the SVPD, plaintiff should have discontinued the pursuit, (Charge VIII (Misconduct– Violation of Police Department Rules) and Charge IX (Incompetence– Incompetent Behavior Involving a Vehicle Pursuit));

(4) On December 31, 2005 (New Year's Eve), approximately five (5) months prior to the date King placed plaintiff on paid administrative leave, plaintiff, who was the officer in charge, left his tour of duty approximately forty-five (45) minutes earlier than the time he was scheduled to work without permission and without prior arrangement with the oncoming officer in charge, and allowed another officer and his friend, Police Officer Anthony Gallo ("Gallo"), to leave work early, (Charges X and XI (both Misconduct– Violation of Police Department Rules));

(5) On December 25, 2005 (Christmas Day), also approximately five (5) months prior to the date King placed plaintiff on paid administrative leave, plaintiff, as patrol supervisor, held another police officer over for two (2) hours after his shift had ended because Gallo had reported to work two (2) hours late and plaintiff did not notify Wilson of Gallo's lateness or otherwise document any disciplinary action taken by him against Gallo, (Charge XII (Misconduct– Violation of Police Department Rules));

(6) Plaintiff did not attend mandatory NIMS (National Incident Management System) training in October 2005 (of which Cummings did not learn until December 2005) and allowed Gallo to miss his scheduled NIMS training in December 2005 without permission from his superiors and in violation of a direct order from Cummings, (Charges XIII and XIV (both Misconduct– Violation of Police Department Rules) and XV (Misconduct– Insubordination)); and

(7) In September 2005, approximately eight (8) months prior to the date King placed plaintiff on paid administrative leave, the public safety dispatcher assigned to plaintiff's patrol squad, Ken Lockard ("Lockard"), complained about that way plaintiff had treated him and requested a transfer from plaintiff's squad. Specifically, on September 17, 2005, plaintiff told Lockard, *inter alia*, that sergeants do not answer calls, i.e., that Lockard should not dispatch calls to plaintiff unless it was an emergency, and refused to respond to a call. (Charge XVI (Misconduct– Failure to Perform Required Duties), Charge XVII (Misconduct– Failure to Properly Supervise) and Charge XVIII (Misconduct– Abuse of Authority)).

(Farrell Decl., Ex. N).

### i.  Collateral Estoppel

The doctrine of collateral estoppel, or issue preclusion, precludes "successive litigation of an issue of fact or law that is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment," Bobby v. Bies, 129 S.Ct. 2145, 2152, 173 L.Ed.2d 1173 (2009) (internal quotations and citation omitted), "even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). In University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court held:

> "[W]hen a state agency acting in a judicial capacity. . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,. . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."

Id. at 799, 106 S.Ct. 3220 (internal quotations and citation omitted); see also Locurto v. Giuliani,

447 F.3d 159, 170 (2d Cir. 2006). "[I]n federal actions based on 42 U.S.C. § 1983 [and Section 1981], state administrative fact-finding is given the same preclusive effect as it would receive in courts of the same state. * * * New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate." Burkybile v. Board of Education of the Hastings-on-Hudson Union Free School District, 411 F.3d 306, 310, 312 (2d Cir. 2005) (citations omitted); see also Elliott, 478 U.S. at 796-7. In addition, preclusive effect is given to state administrative findings that have been subjected to judicial review on Title VII claims. See Elliott, 478 U.S. at 795, 106 S.Ct. 3220; Astoria Federal Savings and Loan Association v. Solimino, 501 U.S. 104, 110-2, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); Nestor v. Pratt & Whitney, 466 F.3d 65, 73 (2d Cir. 2006); Kosakow v. New Rochelle Radiology Associates, P.C., 274 F.3d 706, 728 (2d Cir. 2001); see also Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001) (holding that when an administrative finding is challenged and decided in state court, that finding is given preclusive effect on Title VII claims). "[F]or collateral estoppel to give preclusive effect to administrative agency findings, 'the issue sought to be precluded [must be] identical to a material issue necessarily decided by the administrative agency in a prior proceeding.'" Locurto, 447 F.3d at 170-1 (quoting Jeffreys v. Griffin, 1 N.Y.3d 34, 769 N.Y.S.2d 184, 801 N.E.2d 404, 407 (N.Y. 2003)). The burden of demonstrating the identity of issues between the two proceedings lies with the party seeking the benefit of collateral estoppel, whereas the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior proceeding lies with the opposing party. See Evans v. Ottimo, 469 F.3d 278, 281-2 (2d Cir. 2006) (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 482 N.E.2d 63 (N.Y. 1985)).

Plaintiff's conclusory assertion that the Hearing Officer was not neutral does not satisfy his burden of establishing that he was deprived of a full and fair opportunity to litigate the disciplinary charges against him during the administrative hearing and entirely ignores the outcome of his Article 78 proceeding challenging the administrative hearing, i.e. confirmation of defendants' determination. The Hearing Officer adjudicated the multiple disciplinary charges against plaintiff following eleven (11) days of hearings over a six (6) month period during which, *inter alia*, each side was present, represented by counsel and permitted to call witnesses and present exhibits. (Farrell Decl., Ex. O, pp. 5-6). Thus, plaintiff had an adequate, full and fair opportunity to litigate the substance of the disciplinary charges against him.

Following the hearing, the Hearing Officer issued a fifty-seven (57) page decision in which he: (A) summarized the charges preferred against plaintiff, (Farrell Decl., Ex. O, pp. 1-5), and the testimony and exhibits presented in support of, and in defense of, each charge, (Id., pp. 5-35); (B) made findings of fact with respect to the disciplinary charges against plaintiff, (Farrell Decl., Ex. O, pp. 35-47), and with respect to plaintiff's retaliation defense pursuant to the "whistleblower" statute, N.Y. Civil Service Law § 75-b(2)(a)(ii), (Id., pp. 47-55), and procedural challenges, (Id., pp. 55-56); © found plaintiff guilty of Charges I through X, XII through XV, XVII and XVIII, (Id., pp. 37-47); (D), found plaintiff not guilty of Charges XI and XVI (Id., pp. 42, 46); and (E) recommended that plaintiff's employment with the SVPD be terminated, (Id., p. 57). In addition, the Hearing Officer found, *inter alia*, that Wilson "preferred the [disciplinary] charges against [plaintiff] seeking the termination of his employment with the [SVPD] because of the seriousness of the conduct alleged in the charges and the impact of [plaintiff's] conduct on the [SVPD], and not out of any sense of personal animus towards [plaintiff] or due to any motive

35

to retaliate against [plaintiff] for bringing certain matters to the attention of the District Attorney's Office and the [SCI]." (Farrell Decl., Ex. O, p. 54).

The facts found by the Hearing Officer, i.e., that plaintiff had demonstrated incompetence, (Farrell Decl., Ex. O, pp. 37, 40, 42); misconduct, (Id., pp. 39-40, 42, 44-46); abuse of authority, (Id., p. 47); and insubordination, (Id., p. 56), which unnecessarily risked the safety of his fellow officers and members of the public and "seriously impacted the [SVPD]," (Id., pp. 56-7), and his recommendation that plaintiff's employment with the SVPD should be terminated as a result of such conduct, which were confirmed by the state court upon judicial review, must be accorded preclusive effect. See, e.g. Burkybile, 411 F.3d at 313 (accepting the hearing officer's determinations that the plaintiff was terminated for just cause and had demonstrated incompetence, insubordination, neglect, conduct unbecoming an administrator, and misconduct). Thus, plaintiff is precluded from disputing the content of the substantiated charges or that they justified the termination of his employment. See, e.g. Fischer v. NYC Department of Education, 666 F.Supp.2d 309, 320 (E.D.N.Y. 2009) (finding that although the administrative decision did not preclude the plaintiff's retaliation claim as such, the plaintiff could not dispute the content of the substantiated charges nor that they justified disciplinary action). Accordingly, the Hearing Officer's findings, *inter alia*, that plaintiff was guilty of all but two (2) of the eighteen (18) the disciplinary charges against him is preclusive evidence of defendants' non-retaliatory reasons for the preparation, initiation and pursuit of the charges against plaintiff, his placement on administrative leave, his suspension and his subsequent termination.

     c.     Pretext

Once the defendant satisfies its burden of proffering a non-retaliatory reason for its conduct, the plaintiff must establish by a preponderance of the evidence that the defendant's proffered reason was merely a pretext for retaliation, McDonnell Douglas, at 804, 93 S.Ct. 1817; Malacarne, 289 Fed. Appx. at 447; Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003), i.e., "that retaliation was a substantial reason for the adverse employment action." Hicks, 593 F.3d at 164. A plaintiff can establish pretext by demonstrating that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause." Id.; see also Ibok v. Securities Industry Automation Corp., 09-1930-cv, 2010 WL 808065, at * 2 (2d Cir. Mar. 10, 2010) (summary order). A plaintiff may establish that retaliation was a "substantial or motivating factor" behind an adverse employment action either (1) "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001) (internal quotations and citation omitted).

The Hearing Officer's findings substantiating all but two (2) of the eighteen (18) disciplinary charges brought against plaintiff, and his recommendation that plaintiff's employment with the SVPD should be terminated as a result, which were confirmed by the state court upon judicial review, rebut any claim by plaintiff that charges were preferred and pursued, that he was placed on administrative leave and suspended, and that his employment was terminated for a retaliatory purpose.[12] See, e.g. Roemer v. Board of Education of City of New

---

[12] The Hearing Officer's findings also rebut any claim that King placed plaintiff on administrative leave, and prepared the disciplinary charges against him, for a retaliatory purpose.

York, 150 Fed. Appx. 38, 39-40 (2d Cir. Sept. 23, 2005) (affirming the dismissal of the plaintiff's First Amendment retaliation claim as a matter of law since the finding at the administrative hearing that the plaintiff had been terminated for cause rebutted any claim that the plaintiff's discharge was executed in retaliation for the exercise of any First Amendment right). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's remaining retaliation claims, all of which relate to the preparation, initiation and pursuit of disciplinary charges against plaintiff and to conduct taking as a result of same, is granted and plaintiff's retaliation claims are dismissed in their entirety.

2.      Remaining Discrimination Claims (Third Cause of Action)

To establish a prima facie claim of employment discrimination under Title VII, a plaintiff must demonstrate: (1) that he or she belonged to a protected class; (2) that he or she was otherwise qualified for the position; (3) that he or she suffered an adverse employment action; and (4) that "the adverse action occurred under circumstances giving rise to an inference of discrimination." Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). As with retaliation claims, the burden of establishing a prima face discrimination claim is minimal. Mandell v. County of Suffolk, 316 F.3d 368, 378 (2d Cir. 2003).

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; Leibowitz, 584 F.3d at 498-499, 503. If the defendant satisfies its burden, the plaintiff must establish by competent evidence that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination. McDonnell

38

Douglas, 411 U.S. at 804, 93 S.Ct. 1817; Leibowitz, 584 F.3d at 499, 504. "[T]he question in adjudicating the defendants' motion for summary judgment becomes simply whether the evidence * *, when viewed in the light most favorable to the plaintiff[], is sufficient to sustain a reasonable finding that the adverse employment decision was motivated at least in part by . . . discrimination." Estate of Hamilton v. City of New York, 627 F.3d 50, 55 (2d Cir. 2010) (internal quotations, citation and brackets omitted).

### a. Prima Facie Claim

For purposes of this motion, the first three (3) elements are assumed. There is no direct evidence of discrimination based upon plaintiff's race or color. Although "an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: 'the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge,'" Leibowitz, 584 F.3d at 502 (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)), plaintiff has not proffered any evidence from which such an inference of discrimination can be deduced. Thus, plaintiff has not satisfied his minimal burden of establishing a prima facie case of discrimination. Accordingly, the branch of defendants' motion seeking summary judgment dismissing plaintiff's discrimination claims is granted and those claims are dismissed with prejudice.

### b. Non-discriminatory Reason and Pretext

In any event, as set forth above, defendants have articulated non-discriminatory reasons for the preparation, initiation and pursuit of disciplinary charges against plaintiff resulting in his placement on administrative leave and subsequent termination and plaintiff has not proffered any competent evidence establishing that such reasons were merely a pretext for discrimination. The Hearing Officer's findings, *inter alia*, that plaintiff was guilty of all but two (2) of the eighteen (18) the disciplinary charges preferred against him is preclusive evidence of defendants' non-discriminatory reasons for the preparation, initiation and pursuit of the charges against plaintiff and for his placement on administrative leave and subsequent termination and, together with his recommendation that plaintiff's employment with the SVPD should be terminated, which were confirmed by the state court upon judicial review, rebut any claim of a discriminatory purpose for the preparation and pursuit of disciplinary charges against plaintiff, for the placement of plaintiff on administrative leave or for the termination of plaintiff's employment. Accordingly, even assuming plaintiff has established a prima facie case of discrimination, the branch of defendants' motion seeking summary judgment dismissing plaintiff's discrimination claims based upon the preparation, initiation and pursuit of disciplinary charges against him, his placement on administrative leave and the termination of his employment is granted and those claims are dismissed with prejudice.

### D. <u>Monell</u> Claim

Since all of plaintiff's claims alleging a constitutional violation have been dismissed, any claim against the Village pursuant to <u>Monell v. Department of Social Services of City of New</u>

York, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), is also dismissed. See Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (holding that in order to state a Monell claim, a plaintiff must show, *inter alia*, "an injury to a constitutionally protected right * * *.")


III.    Conclusion

For the reasons stated herein, defendants' motion for summary judgment is granted and all of plaintiff's claims are dismissed in their entirety with prejudice.


SO ORDERED.

_____   /s/.
SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 25, 2011
       Central Islip, N.Y.